Uploaded: 2022DEC20 18:04 Filed By:Bar# 39195 DBECK Reference: EF-114571

VIRGINIA:

IN THE CITY OF CHESAPEAKE CIRCUIT COURT

BRIANA MARIE TYLER,

    Plaintiff,

v.

Case No. CL22007394-00

WALMART INC.,

    Defendant

## WALMART INC.'S PLEA IN BAR

COMES NOW the Defendant, Walmart Inc. ("Walmart"), by counsel, and files this Plea in Bar to the Complaint requesting that the Court dismiss this matter for lack of jurisdiction, because it is barred by the exclusivity provision of the Virginia Workers' Compensation Act ("Act"), Va. Code § 65.2-100 *et seq.*.

In support of its Plea in Bar, Walmart states the following:

### INTRODUCTION

On the night of November 22, 2022, Walmart employee Andre Bing ("Bing") shot fellow employees with a handgun in the employee break room of the Walmart store located at 1521 Sam's Circle in Chesapeake, killing six of his fellow employees and injuring others before killing himself. Appalled and horrified by Bing's actions and the resulting tragedies, Walmart stands firmly committed to its deceased and injured employees, and grieves with their families. Walmart provides workers' compensation coverage to all of its employees for injuries or deaths which occur in the workplace, including those that are the result of intentional assaults by coworkers, and which fall within the Act.

1



The Act provides the sole remedy for such claims, precluding tort actions like the present lawsuit brought by Plaintiff Briana Marie Tyler ("Ms. Tyler"). See Va. Code § 65.2-307. The Act provides remedies "for personal injury or death by accident arising out of and in the course of the employment[.]" Va. Code § 65.2-300. The Act embodies deliberate policy decisions made by the General Assembly and affords a substantial, adequate, and *exclusive* remedy for Ms. Tyler's work-related injuries. Accordingly, Walmart files this Plea in Bar so that the matter will be handled under the exclusive jurisdiction of the Virginia Workers' Compensation Commission, in accordance with Virginia law.

## SUMMARY OF ARGUMENT

Ms. Tyler was employed by Walmart when she was injured in a November 22, 2022 incident in which Bing, a team lead, shot coworkers in an employee break room where Ms. Tyler and other workers gathered at the beginning of her shift (the "Incident"). Ms. Tyler was injured while she was working in a location where she was reasonably expected to be (the break room); while engaged in her duties as a Walmart employee or doing something incidental thereto; by a fellow employee (Bing) who shot his coworkers due to their employment with Walmart. As such, Ms. Tyler's injuries occurred in the course of her employment with Walmart and arose out of her employment. The Act provides Ms. Tyler's exclusive remedy for her work-related injuries and bars her tort claims.

## PLAINTIFF'S ALLEGATIONS

On November 22, 2022, Bing, a Walmart employee, walked into the employee break room of the Walmart located at 1521 Sam's Circle in Chesapeake and opened fire on his coworkers. Compl. ¶¶ 3–6. Ms. Tyler was employed by Walmart and beginning her shift at the time of the Incident. Compl. ¶¶ 1, 3. Bing was a team lead with Walmart who had been employed by Walmart

since 2010 and was responsible for managing the overnight stocking crew that included Ms. Tyler. Compl. ¶¶ 3, 5. Ms. Tyler was in the break room "awaiting shift instructions" from team lead Bing at the time he began shooting. Compl. ¶ 3-4.

After Bing left the break room, Ms. Tyler rushed out into the retail area of the store, attempting to escape. Compl. ¶¶ 7–9. Bing "chas[ed Ms. Tyler] and fir[ed] his gun at her." Compl. ¶ 9. When Ms. Tyler ran to escape from Bing, she injured both of her legs and experienced acute chest pain. Compl. ¶ 12.

Ms. Tyler seeks damages against Walmart for negligent hiring and retention of Bing (Count I), Compl. ¶¶ 39-44; Walmart's *respondeat superior* liability for Bing's intentional actions (Count II), Compl. ¶¶ 45-49; and, gross negligence for "Walmart's retention of Bing as an employee, the failure to terminate him as an employee prior to November 22, 2022, and the failure to respond to complaints received by Walmart management" (Count III). Compl. ¶ 51.

Ms. Tyler claims that Walmart continued to employ Bing and permit him to access the break room even though Ms. Tyler knew Bing had a history of berating, harassing, and threatening coworkers as well as threatening violence against his coworkers if he were fired. Compl. ¶ 16. Ms. Tyler further claims that Bing had been demoted for his disturbing behavior towards his coworkers but was later reinstated as a team lead. Compl. ¶ 18. According to Ms. Tyler, Bing's actions were "predictable and foreseeable" to Walmart because he had been disciplined in the past. Compl. ¶¶ 21, 23, 24, 28. Ms. Tyler argues that Walmart's failure to terminate Bing prior to the shooting "as a result of the violent and dangerous propensities and tendencies" he allegedly displayed constituted negligent retention, and that this failure amounted to gross negligence. Compl. ¶¶ 41-43, 38.

The allegations in the Complaint demonstrate that Bing's actions were directed at his coworkers due to their employment with Walmart, thus implicating the Act's exclusivity. Ms.

3

Tyler contends Bing was acting "in the execution of the service for which Bing was engaged, i.e., as team lead for the team in which plaintiff was employed." Compl. ¶ 47. Ms. Tyler further states that Bing's violence towards her took place "while Bing was acting as the team lead for Walmart at the Chesapeake Walmart." Compl. ¶ 48. Indeed, Ms. Tyler and her coworkers had gathered in the employee break room at the beginning of their shift and were awaiting instructions from Bing when he entered the room and opened fire. See Compl. ¶¶ 3-4.

While alleging Bing was acting within the scope of his employment throughout the shooting incident, Compl. ¶ 47, Ms. Tyler nonetheless denies a causal connection between the shooting and the conditions of her employment. Compl. ¶ 35. She also asserts the legal conclusion that Bing's violence towards her "did not arise out of her employment." Compl. ¶ 36. The allegations in the Complaint demonstrate that these contentions are incorrect.

## STANDARD OF REVIEW AND APPLICABLE LAW

In Virginia, a plea in bar is a defensive pleading that reduces litigation to a single issue, that, if proven, creates a bar to the plaintiff's right of recovery in this Court, although in these circumstances Ms. Tyler can obtain benefits by filing a workers' compensation claim. See Cooper Industries, Inc. v. Melendez, 260 Va. 578, 594, 537 S.E.2d 580, 585 (2000). The moving party carries the burden of proof on the issue. Tomlin v. McKenzie, 251 Va. 478, 480, 468 S.E.2d 882, 884 (1996). Where no evidence is taken in support of a defensive plea in bar, a trial court relies solely upon the pleadings, taking the allegations as true.[1] Tomlin, 251 Va. at 480, 468 S.E.2d at 884.

---

[1] Should the Court determine it is unable to rule on this Plea in Bar based strictly on the allegations contained in the Complaint, Walmart requests the opportunity to conduct discovery on the jurisdictional issue and an evidentiary hearing.

4

## ARGUMENT

For an injury to be compensable under the Act, an employee must show that (1) the injury was a result of an "accident" as defined by the Act, (2) occurring in the course of the employment, and (3) arising out of the employment. R & T Investments v. Johns, 228 Va. 249, 251, 321 S.E.2d 287, 288 (1984).

"When an employee sustains . . . an injury [compensable under the Act], the Act provides the sole and exclusive remedy available against the employer." Butler v. Southern States Coop., Inc., 270 Va. 459, 465, 620 S.E.2d 768, 772 (2005) (citing Rasnick v. The Pittson Co., 237 Va. 658, 660, 379 S.E.2d 353, 354 (1989)). The Act "exclude[s] all other rights and remedies of such employee, his personal representative, parents, dependents, or next of kin, at common law or otherwise, on account of such injury, loss of service, or death" when the Act's remedies apply. Va. Code § 65.2-307(A).

The Act's exclusivity applies not just to negligence claims (*i.e.*, Count I of Ms. Tyler's Complaint), but also to intentional tort claims for which an employee seeks to hold her employer liable under *respondeat superior* (*i.e.*, Count II of Ms. Tyler's Complaint). See Miller v. Washington Workplace, Inc., 298 F. Supp.2d 364, 371-72 (E.D. Va. 2004) (Act barred plaintiff's assault, battery and false imprisonment claims against her employer). The Act likewise bars claims of gross negligence by an employee for injuries sustained in the course of and arising out of employment (*i.e*, Count III of Ms. Tyler's Complaint). See Kohn v. Marquis, 288 Va. 142, 762 S.E.2d 755 (2014) (granting plea in bar under Act for alleged gross negligence of police executives and instructors for death of officer trainee resulting from blow to head during Academy training).

5

## I. Ms. Tyler sustained injuries by "accident" within the meaning of the Act.

Longstanding Supreme Court of Virginia precedent establishes that an intentional assault committed by a fellow employee is an "accident . . . within the meaning of the Act." Continental Life Ins. Co. v. Gough, 161 Va. 755, 759, 172 S.E.2d 264, 266 (1934); see also Schrmebs v. Chick-Fil-A, Inc., 2001 U.S. Dist. Lexis 26224, at *8 (E.D. Va. Nov. 30, 2001) (commenting that "intentional torts committed by co-employees . . . fall within the definition of injury by accident under the Act") (citing Middlekauff v. Allstate Ins. Co., 247 Va. 150, 153, 439 S.E.2d 394, 395 (1994)). An injury by accident under the Act is an identifiable incident that results in a "sudden mechanical or structural change in the body." Kohn, 288 Va. at 147, 762 S.E.2d at 757. Purely psychological injuries are also compensable if caused by "an obvious sudden shock or fright arising in the course of employment." Jackson v. Ceres Marine Terminals, Inc., 64 Va. App. 459, 464, 769 S.E.2d 276, 279 (2015) (citations omitted). To be "by accident," the injury "must have occurred at a particular time and place, as opposed to a cumulative injury from repetitive trauma." Sutter v. First Union Nat'l Bank, 932 F. Supp. 753, 758 (E.D. Va. 1996).

Here, Bing committed an intentional act against his coworkers, including Ms. Tyler. See Compl. ¶¶ 3-4. Ms. Tyler alleges she suffered a sudden mechanical or structural change in her body when she sustained injuries to both legs and acute chest pain, as well as psychological injuries. Compl. ¶¶ 12, 44, 49, 53. Based on these allegations, Ms. Tyler sustained injuries "by accident" under the Act.

## II. Ms. Tyler's injuries occurred in the course of her employment.

An accident occurs "in the course of" employment if it happens within the period of employment, at a place where the employee may reasonably be expected to be, and while the employee is reasonably fulfilling the duties of his or her employment or is performing a task that is reasonably incidental thereto. Baggett Transp. Co. v. Dillon, 219 Va. 633, 637, 248 S.E.2d

6

819, 822 (1978). This element is assessed as to the injured worker, here Ms. Tyler, at the time the assault occurred.[2]

Here, the Incident occurred in the employee break room on the premises of Ms. Tyler's and Bing's employer, a location within the store to which the two of them only had access on account of their employment with Walmart. See Compl. ¶¶ 3-4, 26. Ms. Tyler was "beginning her shift" and "awaiting shift instructions" from Bing when he entered the break room and started shooting. See Compl. ¶¶ 3-4. Ms. Tyler was working at the time Bing opened fire on his coworkers, and therefore Ms. Tyler's injuries occurred in the course of her employment.

### III. Ms. Tyler's injuries arose out of her employment.

The "arising out of" prong addresses the origin or cause of injury. R & T Investments, 228 Va. at 252, 321 S.E.2d at 289. Virginia courts apply the "'actual risk test,' meaning that the employment must expose the employee to the particular danger causing the injury, notwithstanding the public's exposure generally to similar risks." Combs v. VEPCO, 259 Va. 503, 510, 525 S.E.2d 278, 282 (2000) (citation omitted).

As relevant here, in an assault case the causal link showing that the injury arose out of the employment can be established by showing that assailant's attack on their coworker/victim was motivated by work-related factors. King v. DTH Contract Servs., 69 Va. App. 703, 713, 823 S.E.2d 6, 11 (2019). Thus, intentional torts by an employee against a coworker are deemed by Virginia courts to have arisen out of employment *unless* the assault is personal in nature and not directed against the coworker because of their employment. Butler v. S. States Coop, Inc., 270 Va. 459, 466, 620 S.E.2d 768, 772 (2005). For example, the Supreme Court of Virginia has held

---

[2] To avoid any confusion—this element is not assessed as to the assailant Bing, who clearly was acting *outside* the scope of his employment during the shooting.

that a sexual assault resulting from "asserted personal attraction" cannot "be fairly traced to" the employee's employment as a contributing proximate cause. Butler, 270 Va. at 466, 620 S.E.2d at 772-73; see also Fisher v. A.W. Temple, Inc., 2000 Va. Cir. LEXIS 193 (Richmond City Aug. 4, 2000) (denying plea in bar where assailant, an alleged KKK member, assaulted African-American coworker for reasons "personal to plaintiff").

In contrast, numerous courts in Virginia have found the Act's exclusivity bars tort claims where an intentional assault is directed at an employee due to work-related factors. See, e.g., Eckstein v. Sonoco Prods. Co., 2020 U.S. Dist. LEXIS 229213, at *14-15 (W.D. Va. Dec. 4, 2020) (granting motion to dismiss on jurisdictional grounds and finding assault "work-related" where supervisor assaulted subordinate after being confronted by subordinate in attempt to correct disparaging comment made about his work ethic); Jones v. Kroger Ltd. Partnership, 80 F. Supp. 3d 709, 719 (W.D. Va. 2015) (granting motion to dismiss on jurisdictional grounds where manager's assault of female coworker was motivated by perceived defiance by plaintiff "not by his personal feelings or impulses" towards her); Miller v. Washington Workplace, Inc., 298 F. Supp. 2d 364, 372 (E.D. Va. 2004) (granting motion to dismiss intentional tort claims on jurisdictional grounds where "every event in this scenario, [plaintiff's] discontent with [her supervisor's] workplace conduct, her request for a copy of the [sexual harassment] policy, and [her supervisor's] attack on her, was work-related.") (citation omitted); Wood v. Lowe's Home Centers, Inc., 63 Va. Cir. 461, 2003 Va. Cir. LEXIS 247 (Roanoke City Dec. 16, 2003) (granting plea in bar where "perceived insubordination" was a contributing factor to supervisor's assault on cashier).

In her Complaint, Ms. Tyler posits the bare legal conclusion that Bing's violent actions towards her "did not arise out of employment." Compl. ¶ 36. The Court's decision concerning

the "arising out of" element, however, hinges not on an unsupported legal conclusion but on whether the Complaint's factual allegations indicate work-related factors were a cause of the shooting. See e.g., Baggett, 219 Va. at 637, 248 S.E.2d at 821-22 (noting in a workers' compensation case the facts presented by claimant must be sufficient in law to justify an award of compensation on the ground that accident arose out of employment). If work-related factors were a cause of the Incident, Ms. Tyler's injuries arose out of her employment as a matter of law.

Here, it is clear that Bing's actions were motivated by work-related factors. In fact, the Complaint does not contain a single allegation that Bing opened fire in the break room for reasons personal to Ms. Tyler unrelated to work. Nor does Ms. Tyler allege that Bing targeted any of their coworkers for personal reasons unrelated to work. This failure alone should be dispositive on the "arising out of" element.

In contrast to the absence of allegations that Bing's violence was personal, the Complaint contains numerous allegations demonstrating it was work-related. Ms. Tyler asserts Bing had a well-known history of threatening, berating, and harassing coworkers and had been "disciplined leading up to the shooting, making his violent outburst predictable and foreseeable." See Compl. ¶¶ 16, 24. She further alleges that Bing's violent actions towards her were "performed while Bing was acting as the team lead for Walmart" and took place "in the execution of the services for which Bing was engaged" by Walmart as a team lead. Compl. ¶¶ 47, 48; see also Compl. ¶¶ 17, 18, 19, 21, 29 (setting forth additional allegations which support finding Bing's motivation for the shooting was work-related). The logical conclusion to draw from these allegations is that work-related factors were a motivation for the shooting. As pled, Bing's assault was directed at Ms. Tyler and her coworkers because of their employment with Walmart, not motivated by personal animus wholly unrelated to that employment.

9

This Court in Morgan v. Brophy, Case No. Cl18-6321, recently found that an employee's assault of a coworker arose out of the employment under the Act, reasoning "an assault by a manager against an employee fueled by work-related factors, including the perceived quality of the manager's employees and their work performance . . . may be 'traced to the employment as a contributing proximate cause.'" Morgan v. Brophy, 107 Va. Cir. 164, 167, 2021 Va. Cir. LEXIS 93 (Chesapeake Jan. 28, 2021) (granting plea in bar).

Because Ms. Tyler does not plead facts to establish that the Incident was personal in nature (to the contrary, she pleads facts showing it was work-related), and because her injuries otherwise arose out of and in the course of her employment with Walmart, the exclusivity provision of the Act bars her tort claims. Instead, Ms. Tyler can recover for her workplace injuries from the Incident through a claim with the Virginia Workers' Compensation Commission.

WHEREFORE, for the foregoing reasons, Defendant Walmart Inc. respectfully requests that this Court grant the Plea in Bar, dismiss this matter with prejudice for lack of jurisdiction, and grant any other and further relief that the Court may deem just and proper.

WALMART INC.

By: _____
Counsel

Donald Cameron Beck, Jr. (VSB No. 39195)
Gibson S. Wright (VSB No. 84632)
McCandlish Holton, PC
P.O. Box 796
Richmond, Virginia 23218
Tel.: (804) 775-3100
Fax: (804) 775-3800
cbeck@lawmh.com
gwright@lammh.com
*Counsel for Walmart*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of December, 2022, a true and accurate copy of the foregoing was electronically filed via the Court's Virginia Judicial E-Filing System and further certify that a copy of the foregoing has also been served by electronic mail to:

Mark J. Favaloro, Esquire
Favaloro Law
295 Bendix Road, Suite 210
Virginia Beach, VA 23452
mark@markfavaloro.com
*Counsel for Plaintiff*

Donald Cameron Beck, Jr. (VSB No. 39195)
McCandlish Holton, PC
P.O. Box 796
Richmond, Virginia 23218
Tel.: (804) 775-3100
Fax: (804) 775-3800
cbeck@lawmh.com